UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER D., an Individual,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No.: 5:20-00508 ADS<br><br><br>MEMORANDUM OPINION AND ORDER |

I. **<u>INTRODUCTION</u>**

Plaintiff Javier D.[1] ("Plaintiff") challenges Defendant Andrew M. Saul, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly assessed the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

relevant medical evidence and his subjective statements of record and testimony regarding his symptoms and limitations. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

II. **FACTS RELEVANT TO THE APPEAL**

Plaintiff protectively filed for DIB on August 22, 2016, stating that the following conditions limited his ability to work: "arthritis chronic pain; gout; and uric acid." (Administrative Record "AR" 62-63). When asked at the Administrative hearing what prevents him from working, Plaintiff testified of the following conditions: swelling of his knees and pain, problems with his toes, problems in his hands with his fingers, and problems with his neck, elbows and back. (AR 50). Plaintiff appeared to indicate at the hearing that his main problem for the past few years has been with his left knee. (AR 36-37, 54-55). It was also noted at the hearing that, while there are not a lot of treatment records with regard to his upper extremities, Plaintiff indicated that he was recently experiencing problems with his arms and shoulders. (AR 38, 41, 50).

Plaintiff's more recent work history is not significant and includes several different jobs, including as a welder from 1999 thru 2006 and again from 2007 thru 2009; in the maintenance field in 2011; and as a kitchen helper from 2012 thru 2014. (AR 70-71). Plaintiff last worked in 2014, earning $2,411.33 for the Clark County School District as a kitchen helper. (AR 197-201). Plaintiff testified at the Administrative hearing that he could not go back to his job as a welder due to his vision, hands, knees and feet and that he would have trouble standing for very long. (AR 51-52). Plaintiff stated that he now stays at home most of the day, does no chores, and can walk for only ten to fifteen minutes. He testified that he is limited from doing more due to pain in his knee, elbows and shoulders. (AR 53). Plaintiff further testified that he spends most

days sitting around the house watching television or sometimes reading magazines. (AR 54). Plaintiff stated he wears a brace for his knee that he bought at a pharmacy and his attorney acknowledged that no one prescribed a brace in the medical records. (AR 55). Plaintiff further testified that no one has told him that he needs to have knee surgery. (Id.).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff protectively filed an application for DIB on August 22, 2016, alleging a disability onset date of April 30, 2014.[2] (AR 188). Plaintiff's claims were denied initially on October 19, 2016 (AR 62-72) and upon reconsideration on January 26, 2017 (AR 74-84). Thereafter, on February 28, 2017, Plaintiff filed a request for an administrative hearing. (AR 99). A hearing was held before ALJ Troy Silva on December 19, 2018. (AR 31-61). Plaintiff, represented by counsel, appeared and testified at the hearing. Also appearing and testifying at the hearing was vocational expert David A. Rinehart. (Id.).

On January 29, 2019, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[3] (AR 15-24). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on February 3, 2020. (AR 1-8). Plaintiff then filed this action in District Court on March 12, 2020, challenging the ALJ's decision. [Docket "Dkt." No. 1].

---

[2] At the Administrative hearing, Plaintiff's counsel amended the alleged onset date to July 23, 2015, the date of Plaintiff's 55th birthday. (AR 36).

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

On September 8, 2020, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 15, 16]. The parties filed a Joint Submission on November 18, 2020. [Dkt. No. 17]. The case is ready for decision.[4]

**B. Summary of ALJ Decision After Hearing**

In the decision (AR 15-24), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. § 404.1520(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity during the period from the alleged onset date of April 30, 2014 through his date last insured of September 30, 2017. (AR 17). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) cervical and lumbar degenerative disc disease; (b) degenerative joint disease, bilateral knees; and (c) osteoarthritis, right ankle. (AR 17). At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (AR 19).

---

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 11, 12].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] to perform a range of medium work as defined in 20 C.F.R. §§ 404.1567(c)[7,] as follows:

> Specifically, the claimant can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours out of an eight hour workday; sit for six hours out of an eight hour workday; occasionally push/pull with the lower left extremity; occasionally climb ramps and stairs; frequently stoop; and occasionally balance, kneel, crouch, and crawl. The claimant is precluded from climbing ladders, ropes, and scaffolds.

(AR 19).

At **step four**, the ALJ found that Plaintiff was unable to perform his past relevant work as a welder, as this work is classified as skilled and heavy exertional work, as actually and generally performed. This work was therefore found to exceed Plaintiff's medium exertional RFC assessed by the ALJ. (AR 22). At **step five**, considering Plaintiff's age, education, work experience, RFC and the vocational expert's testimony, the ALJ found that there are "jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" such as: hand packager; laundry worker; and packager, machine. (AR 23). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 30, 2014, the original alleged onset date, through September 30, 2017, the date last insured. (AR 24).

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §416.945(a)(1).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c); see also Manzo v. Berryhill, 2018 WL 5099264, at *4 (C.D. Cal. Oct. 17, 2018).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review: (1) whether the ALJ properly assessed the medical evidence; and (2) whether the ALJ properly assessed Plaintiff's testimony and statements concerning his subjective limitations. [Dkt. No. 17 (Joint Submission), 4].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc.

Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. The ALJ Properly Evaluated the Medical Evidence

Plaintiff contends that the ALJ failed to give appropriate weight to significant medical evidence of record supporting Plaintiff's claim of disability. Defendant argues that the ALJ properly considered and weighed all relevant medical evidence of record.

#### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216).

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

As noted above, an RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1). Only the ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

2. All Medical Evidence of Record Was Properly Considered

Plaintiff contends that the ALJ improperly gave greater weight to the opinions of the State agency medical consultants, K. Vu. D.O., and B. Harris, M.D., in assessing him with a medium RFC, then to consultative examining physician, Easley, M.D., who had given Plaintiff functional limitations of a light RFC. Plaintiff argues that the medical

records fail to support a medium RFC and that the ALJ improperly relied too heavily on Plaintiff's statements in the record that he walked two to three times a week at the swap meet. Plaintiff contends that the only support in the medical records for the medium RFC are the opinions of the two State agency consultants and that the ALJ disregarded the medical evidence of gouty arthritis that supports Dr. Easley's functional limitations of a light RFC.

Plaintiff's arguments are unpersuasive. The ALJ properly found that the opinion of Dr. Easley was inconsistent with the medical records. See 20 C.F.R. § 404.1527(c)(4); Burrell v. Colvin, 775 F.3d 1133, 11140 (9th Cir. 2014) ("An ALJ may discredit [even] treating physicians' opinions that are conclusory, brief and unsupported by the record as a whole or by objective medical findings.") The ALJ merely pointed to Plaintiff's statements of walking two to three times at the swap meet as an example of the medical records being inconsistent with the functional limitations assessed by Dr. Easley. Indeed, the ALJ did a thorough and lengthy discussion of Plaintiff's medical records (AR 20-22) in providing explanation for his RFC assessment of Plaintiff as capable of performing medium work with the specified exceptions. Moreover, the ALJ did not "reject" Dr. Easley's opinion as Plaintiff contends. Rather, the ALJ did accord the opinion "some weight" in the RFC assessment, with finding Plaintiff to have several severe impairments and providing exceptions to the medium RFC, as outlined above.

Plaintiff appears to argue that in and of itself it was improper for the ALJ to give more weight to non-examining medical consultants, than to a consulting examining physician. This is simply incorrect. See Bray v. Barnhart, 554 F.3d 1219, 1227 (9th Cir. 2009) (an ALJ properly relied "in large part on the [reviewing] physician's assessment" in assessing the claimant's RFC and rejecting a treating doctor's testimony regarding the

claimant's functional limitations); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). The ALJ simply found that the opinions of the two State agency medical consultants were more consistent with the record as a whole, than that of Dr. Easley.

The Court therefore finds the ALJ properly assessed the medical evidence of record. Plaintiff would simply prefer the ALJ to have a different interpretation of the medical evidence than that assessed. However, it is the role of the ALJ to resolve any conflicts or ambiguities in the medical record. See Tommasetti, 533 F.3d at 1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."): Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that it is the ALJ's job to resolve any conflicts). See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (citation omitted); Robbins, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). Indeed, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. The Court finds no error by the ALJ in considering the medical record in assessing Plaintiff's RFC.

**D.     The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not properly evaluate his testimony regarding his symptoms and limitations. Defendant, on the other hand, contends the ALJ properly evaluated Plaintiff's subjective statements, finding them inconsistent with the record.

1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendants does not contest, and thus appears to concede, that Plaintiff carried his burden of producing objective medical evidence of his impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by

providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas, 278 F.3d at 958-59 (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[8] The ALJ found that Plaintiff's subjective complaints were not entirely consistent with the medical evidence of record, Plaintiff's conservative treatment of his impairments, and Plaintiff's daily activities. (AR 20-22). The ALJ noted that the assessed RFC took into account Plaintiff's complaints of limitation. Plaintiff, however, contends that the ALJ failed to take Plaintiff's complaints into consideration when assessing the RFC.

---
[8] The ALJ did not make a finding of malingering in her opinion. (AR 15-24).

A review of the decision reflects that the ALJ did not "dismiss" Plaintiff's testimony and medical records concerning his pain, symptoms, and level of limitation. Rather, the ALJ considered Plaintiff's testimony in assessing him with an RFC for medium work, with certain exceptions. (AR 19-20).

The ALJ performed a thorough review of Plaintiff's medical record and found that it did not fully support Plaintiff's allegations of disabling conditions. (AR 20-22). The ALJ properly considered how consistent Plaintiff's subjective symptom statements were with this objective medical evidence. 20 C.F.R. § 404.1529(c)(2). This could not be the ALJ's sole reason for rejecting Plaintiff's statements about his symptoms, but it was a factor that the ALJ was permitted to consider. Id.; see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"). Thus, the lack of consistency between Plaintiff's medical records and his testimony was a proper basis for the ALJ's discounting Plaintiff's testimony.

Plaintiff contends that the ALJ improperly pointed to his level of daily activity, such as walking at the swap meet two to three times a week, as a basis for dismissing his testimony. This is not correct. The ALJ cited to Plaintiff's statements in the record of his daily activities to show the inconsistency with his testimony at the Administrative hearing. See Thomas, 278 F.3d at 958-59 (holding that an ALJ may consider inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct when weighing the claimant's credibility).

An ALJ is permitted to consider daily living activities in his credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered in evaluating symptoms); see also Bray, 554 F.3d at 1227 ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors"). Daily activities may be considered to show that Plaintiff exaggerated his symptoms. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [claimant] could return to his old job" but "did suggest that [claimant's] later claims about the severity of his limitations were exaggerated."). Although Plaintiff takes issue with this, it was proper for the ALJ to have considered daily living activities in his credibility analysis. See Burch, 400 F.3d at 681.

Finally, the ALJ also noted that the medical records showed conservative treatment for Plaintiff's impairments. (AR 20). Conservative treatment is a proper basis for discrediting a claimant's subjective pain testimony. See 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (the type, dosage, effectiveness, and side effects of medication and the treatment other than medication that a claimant is receiving or has received are relevant to assessing his subjective complaints); Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("The ALJ also noted that [the claimant's] physical ailments were treated with an over-the-counter pain medication. We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). Here, it was proper for the ALJ to consider that Plaintiff's treatment for his impairments was conservative. Indeed, Plaintiff testified at the

Administrative hearing that no doctor had told him he needed surgery on his knees or prescribed a knee brace. (AR 55).

V. **CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: May 27, 2021

                          /s/ Autumn D. Spaeth
                        THE HONORABLE AUTUMN D. SPAETH
                        United States Magistrate Judge